OIL & GAS VENTURES, INC., a Delaware corporation, as sole General Partner in Behalf of Oil & Gas Ventures—FIRST 1958 FUND, LTD., a New Jersey limited partnership, Oil & Gas Ventures, Inc., a Delaware corporation, as sole General Partner in Behalf of Oil & Gas Ventures—SECOND 1958 FUND, LTD., a New Jersey limited partnership, and Oil & Gas Ventures, Inc., a Delaware corporation as sole General Partner in Behalf of Oil & Gas Ventures—FIRST 1959 FUND, LTD., a New Jersey limited partnership,

Plaintiffs,

vs.

CHEYENNE OIL CORPORATION, FORWARD ENTERPRISES, INC., WESTLAND OIL DEVELOPMENT CORPORATION, LOUIS KUNG, ARTHUR B. ROTHWELL, C. F. CHIEN, and T. P. WANG,

Defendants and Third-Party Plaintiffs,

vs.

CLINTON DAVIDSON, RAYMOND E. HARTZ and OIL & GAS VENTURES, INC.,

Third-Party Defendants.

*New Castle, June 3, 1966.*

*Louis J. Finger,* of Richards, Layton & Finger, Wilmington, and *Arthur B. Kramer,* of Feldman, Kramer, Bam, Nessen & Cowett, New York City, for plaintiffs.

*Howard M. Handelman,* of Bayard, Brill, Russell & Handelman, Wilmington, for defendants Cheyenne Oil Corporation, Forward Enterprises, Inc., Westland Oil Development Corporation, Arthur B. Rothwell, Louis Kung, and Charles F. Chien.

MARVEL, Vice Chancellor: This action for an accounting was filed on December 7, 1962, naming as defendants, among others, Louis Kung and Charles F. Chien. Plaintiffs charged that Cheyenne is and was, as of the time of the matters complained of, the wholly owned subsidiary of the defendant Forward and that from February, 1957, until September, 1962, 80% of the stock of Forward was owned by Westland, 15% being allegedly owned by the defendants Rothwell, Chien, and Wang, each of whom is said to own 5% of such stock or 40 shares apiece. After September, 1962, according to the complaint, the defendant Kung acquired Westland's 80% interest in Forward. Plaintiffs also allege that at all time relevant to the matters complained of the defendant Kung held directly or indirectly a majority of the stock of Westland, and, unbeknownst to plaintiffs, through control of

Westland controlled the defendants Forward and Cheyenne. By use of such control and by choosing directly or indirectly a majority of the board of Ventures, Inc., Mr. Kung was allegedly able to bring about the improper enrichment of defendants at the expense of investors in the plaintiff Funds. This case has been active over the past three years and more, but during this period the appearing corporate defendants have alone defended the action.

It was also charged by plaintiffs in the original complaint that the individual defendants were non-residents of Delaware, and an order was duly entered on December 10, directing that summonses issued against them be returned forthwith on the basis of such non-residency. On December 12, 1962, an order of sequestration was entered for the purpose of compelling appearance of the non-resident defendants as provided for in Title 10 *Del.C.* § 366, and stock of the named defendants in the defendant Forward Enterprises, Inc. was seized, the defendant Kung being the holder of 640 shares of such corporation and the defendant Chien the holder of 40 such shares. In complying with the terms of Rule 4(*dd*), *Del.C.Ann.*, the best estimate plaintiff's could give as to the value of said shares at the time of their seizure was $500 per share.

Plaintiffs thereafter promptly filed and served a notice of their intention to take the deposition of the defendant Chien in his capacity as vice president of the defendant Forward Enterprises, Inc., and such deposition[1] was ultimately taken on March 29, 1963.

The order of sequestration above referred to directed the defendants Kung and Chien to appear and answer the complaint on or before January 23, 1963, and provided that in such persons' failure to appear "* * * that the complaint be taken *pro confesso* as to them * * *". However, neither named defendant appeared on or before the time directed. In fact, they did not respond to the efforts made to compel their appearance until February 15, 1966, when they joined in an answer which was filed without leave of Court after personal service on them had been made in a New York action involving the same subject matter as the case at bar.

---

1. At such deposition, which was taken in the course of one day, it was made clear by Mr. Chien's attorney that while the former was a named defendant, he had not appeared in the action.

Plaintiffs ask that said answers be stricken and that a default motion then be entered against such named defendants. Should a money judgment by default not be granted at this time, plaintiffs apparently intend (assuming their motion to strike is granted) to file a voluntary notice of dismissal under Rule 41(*a*)(1). Should the Court not strike such defendants' answers, plaintiffs ask that the Court enter an involuntary order of dismissal under the terms of Rule 41(*a*) (2).

Rule 6(*b*)(2) provides that after the expiration of a specified period for an act required under the provisions of the Court rules or of a Court order, such specified period of time may be enlarged "* * * where the failure to act was the result of excusable neglect * * *". An examination of the papers here relevant indicates that the normal steps required to ensure notice to a non-resident of pending Chancery litigation were taken in this case, and, in fact, no contention is made by defendants that they were unaware of the charges made against them in this proceeding. As noted above, the deposition of Mr. Chien was taken in his capacity as vice president of the defendant Forward Enterprises, Inc. In short, no effort is made to excuse the three year delay in such defendants' appearance. Rather, defendants take the position that having now appeared and answered, they have responded to efforts to compel their appearance and should be allowed to defend themselves against the charges made in the complaint. They further contend that their dismissal from this action would be unduly prejudicial in light of a suit also brought by plaintiffs now pending against them and others in the United States District Court for the Southern District of New York.

Rule 41 (*a*) (1) provides for voluntary dismissal by notice of an action "* * * before service by the adverse party of an answer or of a motion for summary judgment whichever first occurs * * *". In other words, such part of Rule 41 apparently contemplates the dismissal of the entire controversy between litigants and not the dropping of a single claim or of a party. But see Vol. 5 *Moore's Federal Practice* § 41.06 p. 1088. No Delaware precedent on the application of the rule to the problem here presented is cited to the Court, nor has one been found. And while there is federal authority for the view that Rule 41(*a*)(1) permits the dropping of a party defendant, *Young v. Wilky Carrier Corporation (C.A. 3)*, 150 *F.2d* 764, cert. denied

326 *U.S.* 786, 66 *S.Ct.* 470, 90 *L.Ed.* 477, the case of *Harvey Aluminum Inc. v. American Cyanamid Co. (C.A.* 2), 203 *F.2d* 105, cert. denied 345 *U.S.* 964, 73 *S.Ct.* 949, 97 *L.Ed.* 1383, holds that Rule 21 sets forth the proper procedure for such an application. Other federal authority is to the effect that Rule 15(*a*) provides the appropriate means for dropping a party, *Kerr v. Compagnie De Ultramar (C.A.* 2), 250 *F.2d* 860.

The point would seem to be that regardless of which of these several rules is employed to drop a party defendant, the proper function of the Court is to prevent any undue prejudice to the party affected by a motion such as plaintiffs', and that except where a plaintiff proposes to drop an entire controversy before the filing of an answer or a motion for summary judgment, the Court, while empowered to permit the dropping of a named party defendant, must do so only on terms that are fair and proper, and usually in the early stages of the litigation. See Vol. 5 *Moore's Federal Practice* § 41.06 p. 1084 *et seq.*

In the case at bar I am of the opinion that the defendants who resist plaintiffs' efforts to have them dropped from this case are in no position successfully to oppose plaintiffs' application that their answers be stricken. Having failed to respond to the Court's sequestration order of December, 1962, their belated filing of answers in February, 1966, without leave of Court, was in violation of Rule 6(*b*) (2), and there is no showing that defendants' neglect was excusable. The motion to strike such answers will be granted. For the reasons stated above, however, plaintiffs will not be allowed to drop such defendants as named parties without a Court order, and accordingly the possibility of unfairness to defendants resulting from such an order must be considered.

Defendants, as noted above, charge harassment and that dismissal as to them of the Delaware action will unduly prejudice them. First of all, were defendants' default to be overlooked, it would appear that preparing for trial in New York would be no more burdensome than in this jurisdiction. It is also apparent that such foreign action will go forward in any event. It is further clear that they took no direct part in the Delaware action until the filing of their answers. Insofar as they are concerned, the Delaware action has not

proceeded past its beginning, and it is obvious that judgments against such defendants are sought rather than against their alleged co-conspirators. Significantly, defendants answered only after they apparently failed in their efforts to avoid trial in New York. Conversely, plaintiffs' action in New York was the result of such defendants' failure to appear in this action. In my opinion, plaintiffs should be permitted to drop their claims against the defendants Kung and Chien in this Delaware action. In view of this ruling, it does not appear appropriate to consider plaintiffs' motion for a default judgment, which, in the limited form permitted under Delaware practice, presupposes the continuance in the case of Messrs. Kung and Chien as named defendants. (Compare *Abercrombie v. Davies, (C.A. 572, Del.Ch.)*).

Turning briefly to the questions of plaintiffs' alleged failure to produce certain documents requested by the earlier appearing defendants, such documents must, of course, be produced if available. Plaintiffs must continue to search for missing documents. Appropriate action will be taken on a showing that any documents ordered to be produced have been purposely destroyed.

On notice an appropriate order may be presented.