**PENNZOIL COMPANY, a Delaware corporation, Plaintiff,**

**v.**

**GETTY OIL COMPANY, a Delaware corporation, Gordon P. Getty, Trustee of the Sarah C. Getty Trust, The J. Paul Getty Museum, a California charitable trust, and Texaco Inc., a Delaware corporation, Defendants.**

Court of Chancery of Delaware, New Castle County.

Submitted: Feb. 13, 1984.

Decided: Feb. 15, 1984.

William T. Quillen, Robert K. Payson, Michael D. Goldman, and John E. James, of Potter, Anderson & Corroon, Wilmington, and John L. Jeffers, G. Irvin Terrell, Joseph Cialone, and Michael P. Graham, of Baker & Botts, Houston, Tex., and Mark A. Belnick, and Colleen McMahon, of Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Pennzoil Company.

Lawrence C. Ashby, of Ashby McKelvie & Geddes, Wilmington, and Matthew J. Broderick, G. Daniel O'Donnell, Steven B. Feirson, and Melvin A. Schwarz, of Dechert, Price & Rhoads, Philadelphia, Pa., and Marc P. Cherno, Stuart Z. Katz, and Alexander R. Sussman, of Fried, Frank, Harris, Shriver & Jacobson, New York City, for Getty Oil Company.

William O. LaMotte, III, and Lawrence A. Hamermesh, of Morris, Nichols, Arsht & Tunnell, Wilmington, and William L. Rosoff, of Davis, Polk & Wardwell, New York City, for Gordon P. Getty, Trustee of the Sarah C. Getty Trust.

Bruce M. Stargatt, Jack B. Jacobs, and David C. McBride, of Young, Conaway, Stargatt & Taylor, Wilmington, and Michael Schwartz, of Wachtell, Lipton, Rosen & Katz, New York City, for The J. Paul Getty Museum.

Rodman Ward, and Stuart L. Shapiro, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, for Texaco, Inc.

BROWN, Chancellor.

The plaintiff, Pennzoil Company ("Pennzoil"), following the denial of its application for a preliminary injunction, has filed a notice of voluntary dismissal pursuant to Rule 41(a)(1)(i) as to Texaco, Inc. ("Texaco"), one of the four defendants named in the original and amended complaint. On the same date that Pennzoil filed this notice of voluntary dismissal as to Texaco, it filed a new action against Texaco in the District Court of Harris County, Texas alleging the same cause of action against Texaco that it had alleged in this action. Texaco has responded to this procedural maneuver by moving to quash Pennzoil's notice of dismissal and by moving also to enjoin Pennzoil from prosecuting the Texas action pending the outcome of this suit.

Texaco has accompanied its motion with the filing of an answer to Pennzoil's amended complaint in this action together with a counterclaim against Pennzoil for declaratory judgment relief. The defendant Getty Oil Company ("Getty") has joined in Texaco's application to quash the notice of dismissal and to enjoin Pennzoil from prosecuting the Texas action. Thus, the threshold question presented by Texaco's motion is whether Pennzoil is entitled under Rule 41(a)(1)(i) to dismiss this suit as to Texaco and to proceed against the other named defendants without leave of Court and without Texaco's objections to being dismissed as a party defendant being considered. I find that Pennzoil has the right to do so under the Rule, and accordingly I deny Texaco's motion.

In reaching this decision I acknowledge that I appear to be at odds with the holding in *Oil & Gas Ventures, Inc. v. Cheyenne Oil Corporation*, Del.Ch., 220 A.2d 785 (1966). However, *Oil & Gas Ventures*, in its time, appears to have been decided primarily on the authority of *Harvey Aluminum Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2nd Cir.1953), *cert. denied* 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383, and that decision, in addition to being viewed unfavorably now by the commentators, 5 *Moore's Federal Practice* ¶ 41.06-1, and having been somewhat repudiated in its own Circuit, see *Winterland Concessions Co. v. Smith*, 706 F.2d 793 (7th Cir.1983); *Thorp v. Scarne*, 599 F.2d 1169 (2nd Cir.1979), has since come to represent the minority view under Federal law on the question of the right of a plaintiff to voluntarily dismiss his suit against one of several defendants without leave of court under Rule 41(a)(1).

The facts of this matter applicable to Texaco's motion are as follows. Pennzoil filed this suit against Getty, The J. Paul Getty Museum ("the Museum"), a California charitable trust, Gordon P. Getty, Trustee of the Sarah C. Getty Trust ("the Trustee"), and Texaco. The suit sought to specifically enforce the terms of a contract alleged by Pennzoil to have been entered into between it, Getty, the Museum and the Trustee whereby Pennzoil was to acquire a ³/₇ths ownership interest in Getty. Since Getty, the Museum and the Trustee had subsequently entered into agreements with Texaco whereby Texaco was to become the

sole owner of Getty, Pennzoil also named Texaco as a defendant in an effort to get complete equitable relief against all of the parties and so as to protect its claimed contractual right to obtain a ³⁄₇ths interest in Getty. While Pennzoil's claim against Getty, the Museum and the Trustee was based upon the alleged contract, its claim against Texaco was based upon an alleged tortious interference by Texaco with Pennzoil's rights under the contract. In the event that equitable relief that would give it a ³⁄₇ths interest in Getty should be denied, Pennzoil prayed in the alternative in its complaint for compensatory damages against the four named defendants in a sum no less than $7 billion.

Pennzoil initially sought a preliminary injunction in an effort, in effect, to freeze or set aside a ³⁄₇ths interest in Getty pending the outcome of a trial on the merits. Substantial expedited discovery was undertaken, the matter was extensively researched and briefed by all parties and oral argument was held which lasted well over four hours. So intense was the effort that it is said that the combined legal fees of the parties in reaching this point have exceeded $1 million.

On February 7, 1984 the written decision of this Court was released denying Pennzoil's application for the preliminary injunction. As of that date Getty had filed an answer to Pennzoil's amended complaint, but Texaco had not. Nor had Texaco filed a motion for summary judgment. On February 8 Pennzoil submitted a check to the clerk of this Court in the sum of $25,000 to cover the costs of this action and filed its notice of dismissal as to Texaco. On the same date Pennzoil instituted its new action against Texaco alone in Texas. In the Texas suit Pennzoil has asserted against Texaco the same claim of tortious interference with its alleged contract rights with Getty, the Museum and the Trustee as it had alleged here. In the Texas action, however, Pennzoil seeks only monetary damages against *Texaco*. Moreover, in the Texas action it demands a trial by jury, something which is not obtainable in this Court of equity in Delaware.

Rule 41(a)(1) of this Court, which is patterned after the Federal Rule, states in relevant part as follows:

"Subject to payment of costs . . . an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by an adverse party of an answer or a motion for summary judgment, whichever first occurs. . . ."

Literally speaking, Pennzoil has followed the Rule as to its action against Texaco. As of February 8 Texaco had served neither an answer nor a motion for summary judgment upon Pennzoil. Pennzoil submitted payment to cover the Court costs of the suit. Thus, under the Rule as literally read, it was entitled to dismiss its action as to Texaco by the mere filing of a notice to that effect without an order of the Court.

Texaco contends, however, that the purported dismissal by Pennzoil is void. It relies on the fact that the Court has examined the merits of Pennzoil's tortious interference claim on a developed and exhaustive record at the preliminary injunction stage and has found that Pennzoil did not demonstrate a likelihood of success on the merits. Texaco argues that under such circumstances a voluntarily dismissal by Pennzoil under Rule 41(a)(1)(i) does not lie. For this proposition Texaco relies on *Oil & Gas Ventures, Inc. v. Cheyenne Oil Corp., supra,* and *Harvey Aluminum, Inc. v. American Cyanamid Co., supra,* which, says Texaco, represent the law of this jurisdiction.

Superficially, at least, Texaco's argument appears to be correct. In *Oil & Gas Ventures* certain individual defendants had failed to file an answer to the complaint for more than three years. Corporate defendants had answered, however, and the case had been active as between them and the plaintiffs. When personal service was obtained over the individual defendants in a companion case in New York involving the same subject matter, they proceeded to file belated answers in the action in this Court.

Plaintiffs responded by moving to strike the answers and sought further to have default judgments entered against the individual defendants. In the event that the answers were stricken but a default was not entered, plaintiffs indicated their intention to file a notice of voluntary dismissal as to the individual defendants only pursuant to Rule 41(a)(1). In analyzing the situation then Vice Chancellor Marvel stated as follows at 220 A.2d 787:

"Rule 41(a)(1) provides for voluntary dismissal by notice of an action ' * * * before service by the adverse party of an answer or of a motion for summary judgment whichever first occurs * * * '. In other words, such part of Rule 41 apparently contemplates the dismissal of the entire controversy between litigants and not the dropping of a single claim or of a party. But see Vol. 5 Moore's Federal Practice § 41.06 p. 1088. No Delaware precedent on the application of the rule to the problem here presented is cited to the Court, nor has one been found. And while there is federal authority for the view that Rule 41(a)(1) permits the dropping of a party defendant, *Young v. Wilky Carrier Corporation* (C.A.3), 150 F.2d 764, cert. denied 326 U.S. 786, 66 S.Ct. 470, 90 L.Ed. 477, the case of *Harvey Aluminum Inc. v. American Cyanamid Co.* (C.A. 2), 203 F.2d 105, cert. denied 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383, holds that Rule 21 sets forth the proper procedure for such an application. Other federal authority is to the effect that Rule 15(a) provides the appropriate means for dropping a party, *Kerr v. Compagnie De Ultramar* (C.A. 2), 250 F.2d 860.

"The point would seem to be that regardless of which of these several rules is employed to drop a party defendant, the proper function of the Court is to prevent any undue prejudice to the party affected by a motion such as plaintiffs', and that except where a plaintiff proposes to drop an entire controversy before the filing of an answer or a motion for summary judgment, the Court, while empowered to permit the dropping of a named party defendant, must do so only on terms that are fair and proper, and usually in the early stages of the litigation. See Vol. 5 Moore's Federal Practice § 41.06 p. 1084 et seq."

Chancellor Marvel then proceeded to strike the answers and, after considering the equities of the situation in light of any possible unfairness to the individual defendants that might result from so doing, he further "permitted" the plaintiffs "to drop their claims" against the individual defendants in the Delaware Chancery suit. Texaco thus argues that it is the holding of *Oil & Gas Ventures* that unless a plaintiff is prepared to drop the entire suit against all defendants he cannot utilize Rule 41(a)(1)(i) to voluntarily dismiss his cause of action as to one of the defendants who has failed to file an answer. In such a situation, argues Texaco, only the Court can permit the dismissal of the case against the nonanswering party after reviewing the circumstances for possible prejudice to the non-answering defendant.

Indeed, this appears to have been the holding in *Harvey Aluminum* which, in turn, is the apparent authority for *Oil & Gas Ventures*. In *Harvey Aluminum* the Second Circuit Court of Appeals found that the purpose of Rule 41(a)(1) was "to facilitate voluntary dismissals, but to limit them to an early stage of the proceedings before issue is joined." 203 F.2d at 107. In that case a preliminary injunction hearing had been held over a period of several days, a transcript of over 400 pages had been amassed, and, in the court's view, the merits had been squarely raised. The preliminary injunction was denied and thereafter the plaintiff filed a notice of voluntary dismissal pursuant to Rule 41(a)(1).

On appeal of the denial of a motion to vacate the voluntary dismissal the court reasoned that even though no answer or motion for summary judgment had been filed, the case had reached the point on the merits of the plaintiff's claims where it

would be unfair to the defendants to permit the plaintiff to dismiss the action and to start anew elsewhere. The court held that a literal application of the Rule "would not be in accord with its essential purpose of preventing dismissals after an advanced stage of the suit had been reached." 203 F.2d at 108. It was ordered that the voluntary dismissal be vacated.

In *Harvey Aluminum* the court further held that a voluntary dismissal could not be entered against only one of several defendants under Rule 41(a)(1). It was held that the Rule provided for "the voluntary dismissal of an 'action' not a 'claim;' the word 'action' as used in the Rules denotes the entire controversy, whereas 'claim' refers to what has traditionally been termed 'cause of action.'" 203 F.2d at 108. It was held that Rule 21 provided for the dropping of parties upon motion made to the court.

Thus, Texaco argues for one point that Pennzoil cannot voluntarily dismiss its case against Texaco without leave of Court unless it also dismisses its case against Getty, the Museum and the Trustee, and, for another, that in any event this case, like the situation in *Harvey Aluminum,* has reached the stage where issue has been joined on the merits to the extent that the suit can only be dismissed as to Texaco upon an order of the Court. And on this latter point Texaco offers various reasons as to why it would now be unfair to Texaco to require it to go to Texas to litigate Pennzoil's damage claim based upon Texaco's alleged tortious interference with Pennzoil's contract rights.

But while Texaco's argument as structured under *Oil & Gas Ventures* and *Harvey Aluminum* may be sound, I find myself unable to presently say the same about those authorities on which the argument is based. To begin with, *Harvey Aluminum* now appears to stand in a distinct minority position, a status that did not prevail at the time that Chancellor Marvel cited it as authority for his holding in *Oil & Gas Ventures.* Since then numerous Federal courts

have held that a plaintiff has an absolute right under Rule 41(a)(1)(i) to a voluntary dismissal without prejudice if a defendant has not filed an answer or motion for summary judgment. See e.g., *Thorp v. Scarne, supra; D.C. Electronics, Inc. v. Nartron Corp.,* 511 F.2d 294 (6th Cir.1975); *Scam Instrument Corp. v. Control Data Corp.,* 458 F.2d 885 (7th Cir.1972); *American Cyanamid Company v. McGhee,* 317 F.2d 295 (5th Cir.1963).

Moreover, other more recent Federal decisions have allowed a voluntary dismissal as a matter of right under the Rule as to one defendant even though the plaintiff fails to dismiss or seek dismissal of all defendants. *Winterland Concessions Co. v. Smith, supra; Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.,* 474 F.2d 250 (5th Cir.1973); *Detroit Edison Co. v. Westinghouse Elec. Corp.,* 88 F.R.D. 671 (E.D.Mich. 1981); *Hinkle's Jeep Sales v. Villa Enterprises, Inc.,* 90 F.R.D. 49 (S.D.Fla.1981); *Terry v. Pearlman,* 42 F.R.D. 335 (D.Mass. 1967).

In *Thorp v. Scarne, supra,* the Second Circuit Court of Appeals—the same Court that decided *Harvey Aluminum*—appears to have adopted a firm, and perhaps judicially justifiable position of equivocation in assessing the present precedential worth of *Harvey Aluminum.* On the facts of the case before it, the court found that the rationale of *Harvey Aluminum* did not apply and that the voluntary dismissal by the plaintiff was proper. It went on to say that "[a]lthough there may be a point in legal proceedings where the purpose of Rule 41(a)(1)(i) would be better served by abandoning a literal interpretation, the instant case does not approach that point." To that extent the decision in *Thorp v. Scarne* indicates that the rationale of *Harvey Aluminum* may still be viable law in the Second Circuit in a proper case.

At the same time the *Thorp v. Scarne* court conceded as follows at 599 F.2d at 1175:

"*Harvey Aluminum* has not been well received. Although its rationale is occasionally reiterated in dictum, subsequent cases have almost uniformly either distinguished *Harvey Aluminum,* limiting the case to its particular factual setting, or forthrightly rejected it as poorly reasoned.

\*  \*  \*  \*  \*  \*

"This cool reception is no doubt due in large part to the realization that while *Harvey Aluminum* may have furthered one purpose of Rule 41(a)(1)(i), that of confining dismissals to an early stage of the proceedings, it did so at the expense of a concurrent and perhaps equally important purpose, that of establishing a bright-line test marking the termination of a plaintiff's otherwise unfettered right voluntarily and unilaterally to dismiss an action.

\*  \*  \*  \*  \*  \*

"The wisdom of the bright-line test established by the rule is attested to by the relative infrequency with which the courts of appeals have been called upon to resolve disputes over interpretation of its provisions."

The commentators appear to be of a similar view. At 9 Wright & Miller, *Federal Practice & Procedure* § 2362 at 150 it is stated in reference to the holding in *Harvey Aluminum* that "[t]he sounder view and the weight of authority are, however, to the contrary." At 5 Moore's *Federal Practice,* ¶ 41.06–1 it is also indicated that *Harvey Aluminum* does not represent the better view.

I tend to agree with the reasoning of the above-quoted language from *Thorpe v. Scarne.* If the Rule is applied literally it provides stability. It also gives meaning to the Rule. Everyone will know that prior to the serving of either an answer or a motion for summary judgment by a defendant, a plaintiff will have an absolute right to dismiss his action as to that defendant without having to show reason or justification to

the Court. It will provide the "bright line" of demarcation as to when the Court will have to involve itself in evaluating the propriety of a dismissal of the action as to one or more defendants under the circumstances of the particular case, and when it will not.

On the other hand, if the approach of *Harvey Aluminum* is to be followed, then the Court will have to consider such applications on a case-by-case basis whenever a nonanswering or nonmoving defendant chooses for tactical purposes to make an issue of such an attempted dismissal by a plaintiff. In that event the Court would have to determine whether the case had gone far enough by way of trial preparation, engagement on the merits, etc., to have reached the stage where it would be unfair or prejudicial to the defendant or defendants under the particular circumstances to permit the plaintiff to drop the matter. In this sense the procedure would then become no different than that mandated by Rule 41(a)(2) under which a plaintiff can only voluntarily dismiss an action with the permission of the Court after an answer or motion for summary judgment has been served. As such Rule 41(a)(1)(i) would only have effect, and would only permit the plaintiff to voluntarily dismiss without an order of Court, in those instances where the defendant against whom the dismissal was sought chose to permit it. This, to me, would tend to emasculate the stated intent of Rule 41(a)(1)(i) by engrafting upon it a Court-ordered condition that is not contained in the Rule as written.

Moreover, I cannot see how a literal application of the Rule can be said to work an unfairness to a defendant. This is because a defendant can invoke the protection of Rule 41(a)(2) at any time, and thus cause the propriety of an attempted voluntary dismissal by the plaintiff to be brought before the Court on an adversary basis, by the simple expediency of filing either an answer or motion for summary judgment as

the situation may warrant. *D.C. Electronics v. Nartron Corporation, supra.* If for his own reasons a defendant chooses to engage in extensive discovery and preparation without serving and filing an answer, and if he thereby chooses to leave himself exposed to the possibility of a unilateral, voluntary dismissal by the plaintiff without leave of Court, then I fail to see how he can justifiably complain that the plaintiff has taken advantage of a right given him under the Rule which it was within the power of the defendant to curtail if, in his view, the prosecution and development of the case had gone too far.

In summary, then, I think that to the extent that *Oil & Gas Ventures* can be said to represent our existing law on the subject, it is law based on the rationale of *Harvey Aluminum.* Because the rationale of that case has now been out of favor for some time and since it now represents the minority view within the Federal circuits, I can see no basis to cling dogmatically in this Court to a now outmoded and questionable interpretation of the Rule which *Oil & Gas Ventures* would appear to espouse. I therefore conclude both under the weight of contemporary authority as well as by the clear language of the Rule that Pennzoil in this case had an absolute right to voluntarily dismiss its action against Texaco pursuant to Rule 41(a)(1)(i) in view of the fact that its notice of dismissal was filed prior to the serving of an answer or motion for summary judgment by Texaco.

This being true, it necessarily follows that Texaco was terminated as a party defendant in this case as of the time that the dismissal notice was served and filed. Accordingly, it had no standing to file an answer and counterclaim at the time that it did so and, its motion to quash the voluntary dismissal being hereby denied, it likewise has no standing in this action to seek an injunction to prevent Pennzoil from going forward with its damage action in Texas.

In passing, I note that even if the situation required the Court to pass upon the propriety of Pennzoil voluntarily dismissing the action, there are factors which tend to indicate that Pennzoil had an arguably justifiable basis for so doing. For instance, the primary thrust of its action here was for injunctive relief so as to prevent the total acquisition of Getty by Texaco from taking place until such time as Pennzoil could obtain a final hearing on its contract claims. With the denial of the preliminary injunction application, and with Texaco now going forward unfettered to accomplish its acquisition of Getty, Pennzoil concedes that its hope to obtain equitable relief to enforce the contract rights which it claims to have had are all but gone. Since it is left with only its damage claims, and since its reason for joining Texaco in this action in the first place is gone, there is no compelling reason, it argues, that it should be confined to this Court and required to assert its damage claim against Texaco along with its claims against the other defendants.

Moreover, Pennzoil wants to present its damage claims against Texaco for tortious interference to a jury. It cannot do so in this Court since there is no right of a litigant to a trial by jury in the Delaware Court of Chancery. In addition, the claims of Pennzoil against the defendants are of a divisible nature, even though proof of the existence of a contract between it, Getty, the Museum and the Trustee is a prerequisite to a recovery of damages under either theory on which it relies. As to Getty, the Museum and the Trustee, Pennzoil is suing in contract; as to Texaco it is suing in tort, clearly a legal as opposed to an equitable cause of action. In this sense, Pennzoil argues that it is in no way splitting its cause of action as filed in this Court by electing to pursue a recovery on its tort claim against Texaco in Texas.

Pennzoil has other arguments on the claimed reasonableness of its actions. Texaco and Getty have equally appealing coun-

ter arguments on their part. I cite the aforesaid factors put forth by Pennzoil only by way of example to illustrate that Pennzoil is not necessarily to be considered as attempting a deliberate affront to either this Court or the defendants because of its decision to dismiss Texaco here. It has arguable reasons for so doing. I hasten to point out, however, that I have not based the decision herein upon any equitable weighing of these various factors. Rather, I have decided Texaco's motion strictly on the basis that Pennzoil had an absolute right to voluntarily dismiss its action under Rule 41(a)(1)(i) without being required to seek permission of the Court to do so.

An appropriate form of order may be submitted by Pennzoil.